Filed 11/15/24  P. v. Fort CA1/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br>CECIL LAMAR FORT,<br><br>        Defendant and Appellant. | A169928<br><br>(Solano County<br> Super. Ct. No. VCR216225) |

Defendant Cecil Lamar Fort was convicted of arson of an inhabited structure and other offenses.  He was sentenced under the "Three Strikes" law to 39 years to life in prison.  The trial court subsequently recalled Fort's sentence pursuant to Penal Code[1] section 1172.75, conducted a full resentencing, dismissed various sentencing enhancements, refused to strike a prior strike conviction, and resentenced him to 29 years to life.  On appeal from the resentencing, Fort's counsel filed a brief that raised no issues and asked this court to independently review the record pursuant to *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*).  Fort filed a supplemental letter challenging the court's refusal to strike a prior strike conviction.  We reject Fort's arguments related to his prior strike convictions but we conclude that the trial court erred in failing to recalculate his custody credits at

_____

[1] Undesignated statutory references are to the Penal Code.

1

resentencing. Accordingly, we remand to allow the trial court to recalculate Fort's actual custody credits and, otherwise, we affirm the judgment.

## I. BACKGROUND

The underlying facts are discussed in detail in this court's prior opinion, *People v. Fort* (April 18, 2017, A147033) [nonpub. opn.] (*Fort I*). As recounted in that opinion, in 2012, L.A. lived in a townhouse with her daughter and her mother. Fort was living there temporarily. Fort and L.A. had an argument one evening which resulted in them pushing each other and falling over each other. The police were called, who told Fort to leave. As Fort was taken off the premises, he said, " 'I know how to get back at you.' " (*Ibid.*) Shortly after, L.A. heard something on her patio and found a rock on the patio, damage to the railing, and Fort in the driveway. The police were called again and they arrested Fort. L.A. left to spend the night at her brother's house. The next day, while heavily intoxicated, Fort set a fire inside the living room of L.A.'s townhouse, which included using a bottle of lighter fluid. The carpet around the bottle of lighter fluid had been set on fire as well as a credenza against one of the walls.

In 2013, Fort was charged by amended information with three felonies—residential burglary (§ 459), arson of an inhabited structure with an enhancement alleged for use of an accelerating device (§§ 451, subd. (b), 451.1, subd. (a)), and possession of flammable material (§ 453, subd. (a)). The information alleged Fort suffered prior convictions in 1987 and 1992 which constituted both five-year prior enhancements (§ 667, subd. (a)(1)) and prior strikes (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)). The information further alleged two prior prison term enhancements (§ 667.5, subd. (b)). Fort was also charged with six misdemeanor offenses.

2

A jury convicted Fort of arson, possession of flammable material, and four of the misdemeanor charges. As to the arson charge, the jury found true the use of accelerating device allegation. In a bifurcated bench trial, the trial court found true the two prior convictions allegations and one of the prison priors. Prior to sentencing, the court denied Fort's *Romero*[2] motion to strike his prior strike convictions.

In 2015, the trial court sentenced Fort for arson to a third strike prison term of 25 years to life, and a consecutive four-year term for using an accelerating device. It imposed two consecutive five-year terms for the prior serious felony conviction enhancements. The remaining terms were stayed, stricken, or made concurrent. The aggregate term imposed was 39 years to life. In his direct appeal, Fort argued the People's arson expert should not have been permitted to testify and the prosecutor committed prejudicial misconduct. (*Fort I*, *supra*, A147033.) He raised no issues regarding sentencing. (*Ibid*.) This court affirmed the judgment in 2017. (*Ibid*.)

Subsequently, there were various ameliorative changes in sentencing statutes. Senate Bill No. 483 (2021–2022 Reg. Sess.) (Senate Bill 483) added section 1172.75 to the Penal Code. (*People v. Monroe* (2022) 85 Cal.App.5th 393, 399.) Section 1172.75, subdivision (a) invalidated, with certain exceptions, any sentence enhancement imposed prior to January 1, 2020 for a prior prison term (§ 667.5, subd. (b)). "Once the Department of Corrections and Rehabilitation identifies those persons 'currently serving a term for a judgment that includes an enhancement described in subdivision (a)' to the sentencing court, 'the court shall recall the sentence and resentence the defendant.' (§ 1172.75, subds. (b) & (c).)" (*Monroe*, at p. 399.) Here, in

---

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

3

September 2022, the trial court directed the public defender's office to review Senate Bill 483, and the court scheduled a hearing to consider resentencing.

In November 2023, Fort's counsel filed a "resentencing brief and invitation for the court to strike and/or dismiss enhancements." (Capitalization and boldface omitted.) Fort asked the court to strike one prior strike conviction and to dismiss the sentencing enhancements for use of an accelerating device, prior serious felony convictions, and a prior prison term. He requested he be sentenced to the low term on the arson conviction, doubled based on one remaining prior strike, for a total of six years. Fort argued various sentencing reforms applied to him. As relevant here, Fort requested that the trial court strike one of his prior strike convictions pursuant to newly added section 1385, subdivision (c). Further, he argued that even without sentencing law changes, the court had the power to strike a prior strike pursuant to *Romero*, which decision he urged was now guided by the amendments to section 1385.

In his resentencing brief, Fort discussed his childhood traumas, his time in prison treating his alcohol addiction, and his future prospects.[3] In discussing the present arson offense, Fort asserted that while it was dangerous, it was not the type of random act of violence that demonstrated a threat to the community, was not consistent with the pattern of his prior offenses, and was not likely to repeat itself. He called it "an outlier." He also contended that arson of an inhabited structure "is at the low end of qualifying offenses for a third strike, and a small section of burned carpet is at the very lowest end to qualify under" the arson statute. As to his prior strike

---

[3] Fort's resentencing brief attached various documents, including an assessment discussing his childhood traumas, teenage homelessness, addiction issues, and his stabilization over the prior five years.

convictions, he pointed out they were remote in time—1987 and 1992—and he was 26 years old when convicted of the more recent strike. He advised the court that he had a strong support network able to assist him when released from prison. Fort argued it was "clear" that he was "not the person he was in 2012 when he committed a dangerous crime."

The People opposed Fort's requests, arguing his original sentence of 39 years to life should remain. As relevant here, the People pointed out that the trial court had denied Fort's *Romero* motion prior to the original sentencing and argued nothing had changed regarding the relevant factors to consider. Fort is "the type of violent recidivist offender that the Legislature contemplated when enacting" the Three Strikes law, they stated.

The trial court granted a full resentencing hearing,[4] which it held in December 2023. At the hearing, Fort's counsel made clear that Fort was not questioning whether his original sentence was correct under the laws in effect in 2015. He stated, "the original sentence was perfectly valid at the time." Rather, his focus was on subsequent changes in sentencing laws and Fort's conduct in prison over the nearly 10 years since his original sentencing. The court pronounced sentence in January 2024. In imposing its sentence, the court stated it had reviewed the parties' resentencing briefs, the transcript from the 2015 *Romero* motion hearing and original sentencing, and the 2015 presentence report.

The trial court dismissed both five-year prior serious felony enhancements (§ 667, subd. (a)(1)) and the prior prison term enhancement (§ 667.5, subd. (b)). It denied Fort's request to dismiss the enhancement for

---

[4] "[T]he full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant." (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424–425.)

use of an accelerating device (§ 451.1). The court also refused to strike a prior strike conviction. In doing so, the court stated it was "aware of the factors to consider on a *Romero* motion to strike the strike or strikes, including the nature of past and present felonies, one's background, character and prospects, as well as, I think in the scheme of sentencing, one's upbringing in their youth is something to consider as well." (Italics added.) "As to striking a strike here, I'm aware of my discretion . . . under [section] 1385, as well as the considerations under *Romero*, as well as one's upbringing. I'm going to deny the motion to strike a strike or both strikes." (Italics added.)

The trial court discussed the current arson offense and stated, "The present felony is, in my view, very dangerous conduct. They could have easily led to one or more people being seriously injured or harmed, as well as significant property damage. This was an apartment unit within a larger apartment complex. Also, it arose out of a domestic violence situation, where there was—domestic violence was involved in this, or as a reason for this arson here." The court also explained that Fort's use of lighter fluid to accelerate the fire added to the "already inherent danger of this situation." While it may not have been a sophisticated use of an accelerant, "it is a serious concern when one uses lighter fluid."

The trial court examined the two prior strike convictions. Fort was 21 years old when he was convicted of robbery in 1987. The record did not disclose the facts of that offense, so the court explained that all it knew was that the offense occurred when Fort was 21 years old and it was a violent offense by statute. The court recognized the offense was committed when Fort was under 25 years old, when "the prefrontal cortex is still developing, [and] he had the troubled upbringing that was described." The court also

6

noted, though, that by the time Fort was 21 years old he already had a juvenile conviction, where he was committed to the California Youth Authority (CYA), and had been convicted of two misdemeanors. Based on that, the court reasoned the prior strike showed a lifestyle of criminal behavior, rather than "just being impulsive acts."

The trial court also discussed Fort's second strike, a 1992 conviction for assault with a deadly weapon when Fort was 26 years old. The court explained that the record from the 2015 proceedings provided the facts of that offense: Fort had been drinking alcohol on the day of the offense, there had been some kind of drug transaction and a dispute over a car, which led to an argument where Fort shot the victim in the back with a .22-caliber rifle and stated, "Do you want me to put another one in you?" The court explained that while this occurred when Fort was 26 years old, "which is right around that 25 years of age mark," it was "very serious conduct." "[W]hen you look at the total criminal history of the defendant, in my view, these would not warrant striking either one of these strikes, based on the fact that the defendant was 21 or 26 at the time, as well as his upbringing."

Further, the trial court discussed Fort's criminal background. His first offense was a juvenile conviction in 1983 for stealing a moped, which led to the CYA commitment. Since then, Fort demonstrated "continuous criminal conduct or, otherwise, incarceration, with some small gaps in between, up to the present incident that we're talking about in 2012, when he was 46 years of age." There "has been a long history of engaging in violent conduct." The court recognized that while in prison, in recent years Fort had participated in alcohol abuse treatment, helped others in treatment, and took coursework. He had "engaged in rehabilitation" and "renounced gang activity." In considering his prospects, though, the court considered his lengthy criminal

history. The court noted that in 2019—when Fort was in his early-50s—he engaged in "prohibited conduct while at the state prison," including refusing an instruction to disperse, possessing a sharpened weapon, and fighting. The court considered Fort's counsel's explanations that Fort's rules violations were done in self-defense, as he was trying to renounce gang activity and felt he needed protection from retaliation. The court noted, though, that "this sort of conduct has continued to occur up until just the last very few recent years."

Based on "weigh[ing] all of these factors," the trial court concluded the third strike sentence was appropriate and "it would not be in the interest of justice to strike the strikes." The court found that striking one of the strikes "would endanger public safety." In sentencing Fort, the court also considered aggravating factors as well as mitigating factors, such as Fort's "upbringing" and "alcohol use."

In resentencing Fort, the trial court imposed the original sentence on the arson conviction of 29 years to life (minimum 25-year term plus a four-year term for the use of accelerating device enhancement). The court also imposed and stayed the original four-year sentence on the possession of flammable material conviction. The court did not recalculate Fort's custody credits. The court stated it was "inclined" to leave the credits as set during the original sentencing in 2015, explaining that prisons calculate credits in a way more beneficial to Fort and it did not "want to jeopardize that." Neither the prosecutor nor defense counsel objected.

## II. DISCUSSION

Fort's appointed attorney filed a brief appealing "the trial court's denial of [Fort's] request to dismiss his strike prior convictions," raising no issues, and requesting that this court proceed pursuant to *Delgadillo, supra,*

8

14 Cal.5th 216. We advised Fort of his right to file a supplemental letter or brief (see *id*. at pp. 231–232), and Fort did so. We evaluate the arguments set forth in that supplemental letter. (See *id*. at p. 232 ["If the defendant subsequently files a supplemental brief or letter, the Court of Appeal is required to evaluate the specific arguments presented in that brief and to issue a written opinion."].) Additionally, our independent review of the record (see *ibid*.) revealed potential issues on which we requested, and received, briefing from the parties.[5] We reject the arguments Fort raised in his supplemental letter but we conclude the trial court erred in failing to recalculate his custody credits at resentencing.

## A. *Prior Strike Convictions*

Fort argues the trial court abused its discretion by denying his request to strike at least one of his prior strike convictions. We disagree.

"California's 'Three Strikes' law applies to a criminal defendant who is currently charged and convicted of a felony and who has previously been convicted of one or more serious or violent felonies." (*In re Coley* (2012) 55 Cal.4th 524, 528.) But this scheme does not eliminate a court's discretion to dismiss a defendant's prior strike conviction. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) Either on the court's own motion or on application of the prosecuting attorney, the court may order a prior strike conviction dismissed "in furtherance of justice." (§ 1385, subd. (a); *People v. Carmony* (2004) 33 Cal.4th 367, 373 (*Carmony*).)

"A [sentencing] court's discretion to strike prior felony conviction allegations in furtherance of justice is limited." (*Romero*, *supra*, 13 Cal.4th at

---

[5] Fort submitted his own letter brief pursuant to *Delgadillo*, *supra*, 14 Cal.5th 216. His appellate counsel responded to this court's request for supplemental briefing.

p. 530.)  It "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the [Three Strikes law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies."  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

Given the "strong presumption" that any sentence imposed in conformity with the Three Strikes law is rational and proper, a trial court abuses its discretion in denying a *Romero* motion only in limited circumstances—e.g., where the court was unaware of its discretion to dismiss or considered impermissible factors, or where applying the Three Strikes law to a set of facts would produce an arbitrary, capricious, or patently absurd result.  (*Carmony*, *supra*, 33 Cal.4th at p. 378.)  In short, it is not enough to show that reasonable minds might disagree; where the record is silent or " '[w]here the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, we shall affirm the trial court's ruling, even if we might have ruled differently in the first instance.' "  (*Ibid*.)  It is defendant's burden to show the trial court abused its discretion.  (*Id*. at p. 376.)

Here, Fort has not met his burden of demonstrating that the trial court abused its discretion in refusing to strike one of his prior strike convictions. Fort argues the trial court improperly considered circumstances which did not actually occur.  In evaluating the nature of the present arson offense, the court stated, "The present felony is, in my view, very dangerous conduct. They could have easily led to one or more people being seriously injured or harmed, as well as significant property damage.  This was an apartment unit

10

within a larger apartment complex." Citing *People v. Avila* (2020) 57 Cal.App.5th 1134 (*Avila*), Fort argues the court was required to consider "the nature of [the] circumstances actually committed, not a crime that might have occurred."

In *Avila*, the defendant harassed roadside fruit vendors, demanding they pay him money to sell at the location. When they did not pay him, the defendant threw the fruit to the ground and stomped on it. (*Avila*, *supra*, 57 Cal.App.5th at p. 1139.) After he was convicted of attempted second degree robbery and attempted extortion, the trial court denied the defendant's *Romero* motion and imposed a third strike sentence. (*Avila*, at pp. 1139–1140.) *Avila* concluded the trial court abused its discretion by not striking any of the defendant's prior strikes. (*Id*. at p. 1140.) The trial court had described the defendant's current crimes as " 'violent' " and " 'brutal.' " "The trial court then speculated that had someone not called the police, 'who knows what would have happened.' " (*Id*. at p. 1142.) This was improper. "[T]he trial court speculated about what might have happened had the police not been called, implying the infliction of physical harm to the victims that never appeared in the evidence at trial. Sentencing is not the proper venue for the trial court's imagination. Ruling on a *Romero* motion requires consideration of the nature and circumstance of the crime actually committed, not a crime that might have occurred." (*Ibid*.) As the court explained, "[N]o reasonable person could agree that the sentence imposed on [the defendant] was just." (*Id*. at p. 1145.)

*Avila* is distinguishable. There, the trial court speculated that the defendant may have physically harmed the victims but for police intervention, which was not supported by the evidence. (*Avila*, *supra*, 57 Cal.App.5th at p. 1142.) In contrast, here, the trial court did not imagine

11

that Fort had committed an uncharged future crime; it reasonably considered the potential consequences from a fire which Fort started that burned part of the living room. Further, in *Avila*, the defendant's present offense was squashing oranges in a failed attempt to commit extortion or robbery; he did not use a weapon or physical violence. (*Ibid*.) Neither offense was a violent crime by statute nor "was the trial court merely hyperbolically describing [the defendant's] crimes as violent." (*Id*. at pp. 1142–1143.) Fort's arson offense, in contrast, involved setting a fire inside an inhabited dwelling, which is a serious and violent crime by statute. (§§ 667.5, subd. (c)(10), 1192.7, subd. (c)(14).) Merely because the fire did not spread to other units within the complex and because no one was injured does not mean Fort's conduct was not dangerous.

Fort remarks on the circumstances surrounding his two prior strikes, stating that he was under the age of 26 when he committed those offenses and the convictions were more than 30 years old at the time of his resentencing. Fort's counsel submitted an extensive resentencing brief, which discussed youth, trauma, and brain development. He asserted that Fort's prior convictions were committed in his youth and remote in time. The trial court reviewed Fort's brief and, at the hearing, it acknowledged Fort's ages at the time of the prior convictions. The resentencing brief also brought up how old the prior convictions were. The court was aware of this information but declined to give it mitigating significance after weighing the *Williams* factors. (*People v. Williams*, *supra*, 17 Cal.4th at p. 161; see also *People v. Solis* (2015) 232 Cal.App.4th 1108, 1124 [no abuse of discretion in not striking 30-year-old strikes].) We decline to second-guess the court's exercise of discretion.

12

Fort also argues that the trial court relied on hearsay and "used its imagination" to form an opinion "as to the serious or violent nature" of the prior strike offenses. This is especially so as to his robbery conviction, he argues, because no information was provided regarding that offense. We are not persuaded. His prior strike offenses of robbery (§ 211) and assault with a firearm (§ 245, subd. (a)(2)) are considered serious felonies by statute, and robbery is also considered a violent felony. (§§ 667.5, subd. (c)(9), 1192.7, subd. (c)(8), (19), (31).)

Additionally, Fort focuses on his conduct in prison, asserting that "at the time of sentencing it had been [five] years or better since [he] had a serious rule violation." Fort's resentencing brief discussed his time in prison for the current offense, acknowledging conflicts he had had and explaining positive steps he had made, including his active participation in alcohol abuse treatment and renouncement of his prior prison gang membership. The record demonstrates that the trial court considered this information. Therefore, we cannot conclude the trial court abused its discretion in not striking a prior strike based on Fort having spent the recent five years without a prison rule violation.

The record indicates the trial court considered the relevant facts and reached an impartial decision. (See *Carmony*, *supra*, 33 Cal.4th at p. 378.) Fort failed to demonstrate that the court's decision was irrational or arbitrary. (See *id.* at p. 376.) Accordingly, the trial court did not abuse its discretion in denying Fort's request to strike a prior strike conviction. To the extent Fort has argued that the trial court should have dismissed a prior strike conviction pursuant to section 1385, subdivision (c),[6] we reject that

_____

[6] Section 1385 was amended effective January 1, 2022 to add subdivision (c), which identifies "specific mitigating factors the trial court

contention. Section 1385, subdivision (c) applies only to sentencing enhancements and does not apply to the Three Strikes law. (*Burke, supra*, 89 Cal.App.5th at p. 244; accord, *People v. Olay* (2023) 98 Cal.App.5th 60, 69.)

Finally, regarding his two prior strike convictions, Fort remarks that "a jury never heard [his] priors." Relying on *People v. Gallardo* (2017) 4 Cal.5th 120 (*Gallardo*), he contends that the Sixth Amendment to the federal Constitution contemplates that a jury must "find the facts giving rise to a conviction when those facts lead to the imposition of additional punishment under a recidivist sentencing scheme." Here, after the jury found Fort guilty of various charges, the trial court conducted a bench trial on the prior convictions. Fort was then sentenced in 2015. The People argue, and we agree, that Fort waived this argument. The time to appeal the court's evidentiary findings, or the court's procedure in conducting a bench trial on the prior convictions, has passed. (Cal. Rules of Court, rule 8.308(a).) We decline to address Fort's claims which could have been, but were not, raised in his direct appeal in *Fort I*. (See *People v. Senior* (1995) 33 Cal.App.4th 531, 538 ["where a criminal defendant could have raised an issue in a prior appeal, the appellate court need not entertain the issue in a subsequent appeal absent a showing of justification for the delay"].) Additionally, while *Gallardo* was issued after this court's decision in *Fort I*, "the *Gallardo* rule does not apply retroactively to final judgments." (*In re Milton* (2022) 13 Cal.5th 893, 897.) Fort's appellate counsel concedes that Fort's judgment

---

must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242–243 (*Burke*).) In Fort's resentencing brief, Fort's counsel asked the trial court to strike one of Fort's prior strike convictions pursuant to both section 1385, subdivision (c) and *Romero*. Fort's supplemental letter brief on appeal cites both *Romero* and section 1385, but he does not cite any subdivision(s) of section 1385.

was final when *Gallardo* was issued, as the Supreme Court had already denied his petition for review. Therefore, Fort cannot rely on *Gallardo*.

### B. Custody Credits

The parties agree that the trial court erred by not recalculating Fort's custody credits at resentencing and that the case must be remanded for the court to do so. In conducting a resentencing, the trial court must calculate the actual time in custody served by the defendant before the resentencing and credit that time against the new sentence. (See § 2900.1 ["Where a defendant has served any portion of his sentence under a commitment based upon a judgment which judgment is subsequently declared invalid or which is modified during the term of imprisonment, such time shall be credited upon any subsequent sentence he may receive upon a new commitment for the same criminal act or acts."]; see also *People v. Buckhalter* (2001) 26 Cal.4th 20, 23, 37 [the trial court must recalculate the *actual time* the defendant had already served prior to the modification and credit that time against the subsequent sentence].) We therefore remand the case with instructions for the trial court to recalculate Fort's actual time in custody before the current resentencing and award such credits in an amended abstract of judgment.

Finally, we comment on the determinate amended abstract of judgment the trial court filed on February 9, 2024. While that abstract of judgment will be superseded based on our above directive, to assist the trial court on remand we point out that this court observed clerical errors—which the parties confirmed—which must be corrected when the court files a second amended abstract of judgment. (See *Burke, supra,* 89 Cal.App.5th at p. 244 [ordering correction of clerical errors in abstract of judgment following *Wende*[7] review].) The errors include: the date of hearing is identified as

---

[7] *People v. Wende* (1979) 25 Cal.3d 436.

15

November 6, 2015, but it should reflect the date of the resentencing hearing, January 19, 2024; defendant's counsel is identified as Robert Warshawsky but Edward Cohen represented Fort at his resentencing hearing; the reporter is identified as A. Ponce but the reporter at the resentencing hearing was Sarah Martinez; the execution of sentencing (section 15) is identified as being imposed at the initial sentencing hearing in November 2015, but it should reflect imposition at resentencing per recall of commitment; conduct credits (section 16) are identified as being awarded pursuant to section 2933 but the trial court stated at the resentencing hearing (and at the original sentencing hearing) that credits were awarded pursuant to section 2933.1; section 16 identifies November 6, 2015 as the date the sentence was pronounced but it should reflect the resentencing date of January 19, 2024; the clerk certification is dated November 19, 2015, which date is prior to the 2024 resentencing. Finally, the trial court used a prior version of Judicial Council form CR-290, which has been superseded by the version of form CR-290 revised effective May 1, 2023.

### III.   DISPOSITION

The matter is remanded for the trial court to recalculate and award Fort the custody credits to which he is entitled. The clerk of the superior court is directed to prepare a second amended abstract of judgment memorializing these credits and correcting clerical errors from the February 9, 2024 amended abstract and to forward a certified copy to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.

16

LANGHORNE WILSON, J.

WE CONCUR:

HUMES, P. J.

BANKE, J.

A169928
*People v. Fort*

17